# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| SPINE IMAGING MRI, L.L.C., a Minnesota limited liability company, | Civil No. 09-1963 (JRT/AJB) |
| Plaintiff, | |
| v. | |
| LIBERTY MUTUAL INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, and AMERICAN FAMILY MUTUAL INSURANCE COMPANY | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |
| LIBERTY MUTUAL INSURANCE COMPANY, | |
| Counterclaim Plaintiff, | |
| v. | |
| SPINE IMAGING MRI, L.L.C., | |
| Counterclaim Defendant. | |

Eric C. Tostrud and Matthew R. Salzwedel, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401-2179, for plaintiff/counterclaim defendant.

Sharie L. Lowden, **LAW OFFICES OF STILP & GROVE**, 701 Xenia Avenue South, Suite 220, Golden Valley, MN 55416; and Michael W. Lowden, **LOWDEN LAW FIRM**, 4737 County Road 101, Suite 304, Minnetonka, MN 55345, for defendant/counterclaim plaintiff Liberty Mutual Insurance Company.

John C. Syverson and Richard S. Stempel, **STEMPEL & DOTY P.L.C.**, 41 Twelfth Avenue North, Hopkins, MN 55343, for defendant Allstate Insurance Company.

Mark A. Solheim, Hilary J. Loynes, and Paula Duggan Vraa, **LARSON KING, LLP**, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101-4922, for defendant American Family Mutual Insurance Company.

Plaintiff Spine Imaging MRI, L.L.C. ("Spine Imaging") provides medical imaging services to individuals with neck and spine injuries. Spine Imaging brought this action against defendant-insurers Liberty Mutual Fire Insurance Co. ("Liberty"), Wilson Mutual Insurance Company ("Wilson"), Allstate Insurance Company ("Allstate") and American Family Mutual Insurance Company ("American Family") (collectively, "defendants"), alleging claims for breach of contract, declaratory judgment, and unjust enrichment arising out of defendants' refusal to pay for medical imaging services provided by Spine Imaging to defendants' policyholders. Liberty filed counterclaims asking for a declaration that Spine Imaging is knowingly operating in violation of the corporate practice of medicine doctrine and seeking recovery of benefits paid to Spine Imaging. The case is before the Court on Allstate and American Family's motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim; and on Spine Imaging's motion to dismiss counterclaims filed by Liberty.

## BACKGROUND

Spine Imaging specializes in providing magnetic-resonance imaging ("MRI") to assist physicians and chiropractors with the diagnosis and treatment of various medical conditions, with a specific focus on the neck and spine. (Am. Compl. ¶ 18, Docket

No. 45.)  MRI technology provides images of the human body that can be used to assist in diagnosing various medical conditions and assess the most effective course of treatment.  (*Id.* ¶ 21.)

Spine Imaging alleges that there are two steps to providing medical imaging services.  The first step, the "technical component," "involves physically taking the MRI scan itself.  This is a mechanical process that can be performed by trained MRI technicians."  (*Id.* ¶ 25.)  Spine Imaging employs such MRI technicians.  (*Id.* ¶ 25.)  The second step, the "professional component," "involves interpreting the image that results from the MRI scan.  This interpretation must be performed by a licensed physician or chiropractor."  (*Id.* ¶ 26.)  Spine Imaging claims it only provides the technical component of the MRI services, but maintains "independent-contractor relationships with board certified radiologists, neuroradiologists, and skeletal radiologists, who provide patients with interpretational MRI services and prepare summary reports."  (*Id.* ¶ 28.)  Spine Imaging concedes that it is not owned or operated by a licensed physician or chiropractor, but also avers that it does not employ licensed physicians or chiropractors as part of its medical imaging services.  (*Id.* ¶¶ 19-20.)  Spine Imaging actively markets its services to the chiropractic community to provide services to individuals who have suffered neck and spine injuries in automobile accidents.  (*Id.* ¶ 31.)  Spine Imaging has experienced substantial success and its services have been in demand.  (*Id.* ¶¶ 32-41.)

In Minnesota, "no-fault" automobile insurance covers the cost of treatment for most car accident victims.  (*Id.* ¶ 42.)  Defendants all provide "no-fault" automobile insurance in Minnesota, and some of Spine Imaging's clients have insurance policies

with defendants. (*Id.* ¶ 43.) Spine Imaging alleges that defendants regularly reimbursed Spine Imaging for the MRI services provided to defendants' policyholders. (*Id.*)

In spring 2009, defendants ceased reimbursing Spine Imaging for medical imaging services provided to defendants' policyholders. (*Id.* ¶ 49.) Defendants aver that they ceased paying those claims because Spine Imaging's corporate structure and business operations violated the Minnesota common law corporate practice of medicine doctrine, which prohibits a corporation from engaging in or providing professional medical services. (*Id.* ¶ 50.) Spine Imaging claims that the corporate practice of medicine doctrine does not apply to it because it only provides the technical component of the medical imaging services, and those services do not constitute the "practice of medicine." (*Id.* ¶ 57.) Further, Spine Imaging asserts that it does not exert control over the independent contractors with whom it contracts to interpret the MRI images as part of the professional component of the medical imaging services. (*Id.* ¶ 58.) Spine Imaging emphasizes that the licensed physicians/independent contractors are not Spine Imaging employees. (*Id.*) Spine Imaging alleges that even if its business violated the corporate practice of medicine, defendants are not excused from paying Spine Imaging for MRIs provided to defendants' policyholders because "[t]here is absolutely no evidence that Spine Imaging was or is knowingly and intentionally violating" the doctrine. (*Id.* ¶ 59.)

In response to defendants' refusal to pay for medical imaging services performed, Spine Imaging brought this action in federal court based on diversity of citizenship jurisdiction. (*Id.* ¶ 16.) In its Amended Complaint, Spine Imaging alleges claims for breach of contract, declaratory judgment, and unjust enrichment. In its breach of contract

claim, Spine Imaging alleges that "Defendants' refusal to pay Spine Imaging for its imaging services already provided by Spine Imaging to defendants' policyholders constitutes a breach of contract. . . . [and] Spine Imaging has suffered substantial damages as a result of defendants' breach of contract." (*Id.* ¶¶ 62-63.) In its claim for declaratory judgment, Spine Imaging asks the Court to enter judgment declaring that "(a) the physical taking of MRI scans does not constitute the practice of medicine; (b) Spine Imaging's practice of engaging independent contractors to provide the professional component of MRI services does not violate the corporate practice of medicine doctrine; [and] (c) Spine Imaging did not knowingly or intentionally violat[e] the corporate practice of medicine doctrine." (*Id.* ¶ 73.) In its claim for unjust enrichment, Spine Imaging alleges that "[d]espite that defendants' policyholders have received valuable and medically necessary services, defendants have refused to pay for those services, and it would be inequitable and unjust for defendants to receive the benefits of these services without paying for their reasonable value." (*Id.* ¶ 78.)

Allstate and American Family filed motions to dismiss, arguing that the Court does not have subject matter jurisdiction over the case and that the Amended Complaint fails to state a claim on which relief may be granted. (*See* Docket Nos. 34, 40.) Spine Imaging brought a motion to dismiss Liberty's counterclaims, which seek a declaration from the Court that Spine Imaging's business violates the Minnesota corporate practice of medicine doctrine and seek recovery of benefits previously paid to Spine Imaging for medical imaging services. (Docket No. 67.) The Court first addresses Allstate and

American Family's motions to dismiss, and then turns to Spine Imaging's motion to dismiss Liberty's counterclaims.

## I.    ALLSTATE AND AMERICAN FAMILY'S MOTIONS TO DISMISS

### A.    Standard of Review for 12(b)(1) and 12(b)(6) Motions to Dismiss

#### 1.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims. *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008). A party invoking federal subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to a consideration of the face of the complaint, but may also consider evidence submitted by the parties. *Gilmore v. Nw. Airlines, Inc.*, 504 F. Supp. 2d 649, 653 (D. Minn. 2007).

#### 2.    Motion to Dismiss for Failure to State a Claim

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, --- U.S. ---,

129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore, must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### B.  Corporate Practice of Medicine Doctrine and *Isles Wellness*

The corporate practice of medicine doctrine prohibits a corporation or lay person from engaging in or providing professional medical services. The doctrine has only recently reemerged in Minnesota jurisprudence as a force governing control of entities that provide medical services. That reemergence has been signaled by the Minnesota Supreme Court's rulings in *Isles Wellness, Inc. v. Progressive Northern Insurance Co.* (*Isles Wellness I*), 703 N.W.2d 513 (Minn. 2005), and *Isles Wellness, Inc. v. Progressive Northern Insurance Co.* (*Isles Wellness II*), 725 N.W.2d 90 (Minn. 2006); and the Minnesota Court of Appeals case *Isles Wellness, Inc. v. Progressive Northern Insurance Co.* (*Isles Wellness III*), No. 27-CV-03-005396, 2009 WL 2928548 (Minn. Ct. App. Sept. 15, 2009). Given the importance of the doctrine in this case and the more recent

case law addressing that doctrine the Court provides a brief discussion of those cases below.

In *Isles Wellness I*, the Minnesota Supreme Court addressed the role of the corporate practice of medicine doctrine in Minnesota common law jurisprudence. The plaintiffs – a massage therapy clinic, physical therapy clinic, and chiropractic clinic – brought an action against the defendant-insurance companies for breach of contract and unfair claims practices in connection with the defendants' refusal to pay bills for the treatment of five patients. *Isles Wellness I*, 703 N.W.2d at 515. The defendants asserted that the clinics were operating in violation of the corporate practice of medicine doctrine and counterclaimed for recovery of payments already made to the clinics. The Minnesota Supreme Court took the opportunity to examine the bounds of the corporate practice of medicine doctrine in Minnesota.

The Minnesota Supreme Court noted that the primary public policy considerations supporting the doctrine "include concerns raised by the specter of lay control over professional judgment, commercial exploitation of the health care practice, and the possibility that a health care practitioner's loyalty to a patient and an employer will be in conflict." *Id.* at 517. The Supreme Court stated that one of the key questions to be resolved in determining the applicability of the corporate practice of medicine doctrine is whether the provider's activities constituted "the practice of healing." *Id.* at 519. The Supreme Court stated:

> The term "practicing healing" or "practice of healing" shall mean and include any person who shall in any manner for any fee . . . [or] compensation, or in expectation thereof, engage in, or hold out to the public

as being engaged in, the practice of medicine or surgery, the practice of osteopathy, the practice of chiropractic, the practice of any legalized method of healing, or **the diagnosis, analysis, treatment, correction, or cure of any disease, injury, defect, deformity, infirmity, ailment, or affliction of human beings**, or any condition or conditions incident to pregnancy or childbirth, or examination into the fact, condition, or cause of human health or disease, or who shall, for any fee, gift, compensation, or reward, or in expectation thereof, suggest, recommend, or prescribe any medicine or any form of treatment, correction, or cure thereof[.]

*Id.* at 519 n.9 (emphasis added) (quoting Minn. Stat. § 146.01 (2004)).

After analyzing whether the clinics "practiced healing" and reviewing public policy considerations, the Minnesota Supreme Court concluded that the corporate practice of medicine doctrine did not apply to massage therapy or physical therapy clinics, but did apply to chiropractic clinics. *Id.* at 522-24. The Minnesota Supreme Court affirmed in part and reversed in part, and remanded the case to determine whether the insurers were required to pay outstanding amounts billed for services provided by the plaintiff-clinics. *Id.* at 524.

On remand, the Minnesota Court of Appeals determined that outstanding claims for chiropractic services were void as against public policy. *Isles Wellness II*, 725 N.W.2d at 92. In *Isles Wellness II*, the Minnesota Supreme Court granted review of the court of appeals decision to resolve the issue of "whether operating a chiropractic clinic in violation of the corporate practice of medicine doctrine voids all contracts between the plaintiffs and the insurers as a matter of public policy." *Id.* The Minnesota Supreme Court concluded that "categorically voiding the contracts would not serve the public policy reasons underlying the corporate practice of medicine doctrine." *Id.* at 95. The Minnesota Supreme Court held that a contract will not be voided "unless it is established

that the corporation's actions **show a knowing and intentional failure to abide by state and local law**." *Id.* at 95 (emphasis added). That rule accounts for whether the illegality of a contract tainted the transaction so as to make it void under public policy, and yet prevents insurers from enjoying windfalls from "minor technical violations" of the corporate practice of medicine doctrine. *Id.* The Minnesota Supreme Court thus remanded the case once again.

In *Isles Wellness III*, the Minnesota Court of Appeals filed an unpublished opinion addressing an appeal from the district court's conclusion that it had jurisdiction only over the legal issues in the case and not the factual issues under the Minnesota No-Fault Automobile Insurance Act (the "Minnesota No-Fault Act"). *Isles Wellness III*, 2009 WL 2928548 at *2. The court of appeals made several conclusions pertinent to the instant case. First, the court of appeals concluded that the insurers "appropriately sought to resolve legal issues in the courts [i.e., whether plaintiffs violated the corporate practice of medicine doctrine] before obtaining a determination of the fact issues in arbitration." *Isles Wellness III*, 2009 WL 2928548, at *3. Next, the court of appeals concluded that the clinics had standing to pursue the insured's no-fault medical-expense claims in arbitration. *Id.* at *3. Although the court of appeals noted that the insurers waived their rights to object to the existence of assignments of claims by the insured to the clinics, the court also held that the insured were not prohibited from assigning to the clinics their rights to the proceeds of a claim for no-fault benefits. *Id.* at *4 (citing *Reitzner v. State Farm Fire & Cas. Co.*, 510 N.W.2d 20, 26 (Minn. Ct. App. 1993)). Finally, the court concluded that for the purposes of the Minnesota No-Fault Act, a party with an

assignment from the insured – like a clinic or health-care provider – could bring a claim under the Act. *Id.* at *4.

Given this background, the Court turns to the merits of the parties' motions to dismiss.

### C. Subject Matter Jurisdiction

#### 1. Diversity of Citizenship Jurisdiction

Spine Imaging alleges that the Court has subject matter jurisdiction over the case pursuant to federal diversity of citizenship jurisdiction. Under 28 U.S.C. § 1332(a), the Court may exercise jurisdiction over completely diverse parties "where the matter in controversy exceeds the sum or value of $75,000." "[A] complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002) (internal quotation marks omitted; alteration in original.) "If the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Id.*; *see also id.* at 885 ("The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000."). The amount in controversy "is determined at the time the complaint was filed." *Watson v. Blankenship*, 20 F.3d 383, 387 (10th Cir. 1994).

Spine Imaging alleges that the amount in controversy here exceeds $75,000, exclusive of interests and costs:

> Among other reasons, the amount in controversy is satisfied because the value of the object of this litigation – Spine Imaging's right to conduct its business affairs free from interference of the common-law prohibition of the corporate practice of medicine, and the loss to Spine Imaging's business likely to flow from the continued interference of the corporate practice of medicine doctrine – well exceeds the jurisdictional threshold of $75,000.

(Am. Compl. ¶ 16, Docket No. 45.) Because the standard for reviewing the amount in controversy requirement is different for the breach of contract and unjust enrichment claims and for the declaratory judgment claim, the Court addresses those claims separately.

### a. Amount in Controversy

#### i. Count I (Breach of Contract) and Count III (Unjust Enrichment)

Allstate argues that Spine Imaging has not satisfied the amount in controversy requirement for Count I and Count III. In Count I, Spine Imaging alleges that defendants breached the insurance policies issued to its policy holders; and in Count III, Spine Imaging alleges that defendants are liable for services already provided to their policyholders. Spine Imaging does not allege that it has suffered damages exceeding $75,000, and refers only to the "future loss" to its business, as that loss is tied to the claim for declaratory relief. In response to Allstate's challenge to the amount in controversy, Spine Imaging submitted an affidavit stating that "[a]s of October 15, 2009, the amount

of outstanding no-fault claims for services rendered by Spine Imaging that have not been paid by Allstate Insurance Company is $101,082.64." (Hentges Aff. ¶ 4, Docket No. 59.)

Spine Imaging's proffered evidence is lacking. First, the satisfaction of the amount in controversy requirement is determined at the time the complaint is filed. *Watson*, 20 F.3d at 386. Here, the original complaint was filed on July 28, 2009, and the Hentges affidavit refers to an outstanding balance as of October 15, 2009. Further, there is no indication that the outstanding balance is based on claims denied solely because Spine Imaging was operating in violation of the corporate practice of medicine doctrine. As a consequence, Spine Imaging has not satisfied the amount in controversy requirement for Counts I and III. Thus, Spine Imaging must allege and establish by a preponderance of the evidence that the amount in controversy relating to Count II, its declaratory judgment claim, satisfies the statutory threshold. *See Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir. 1971) ("It is [a] well settled rule that once diversity jurisdiction is properly invoked, a single plaintiff may properly aggregate all of the claims which he has against the defendants to satisfy the jurisdictional amount."). The Court concludes below that Spine Imaging has satisfied that requirement.

### ii.     Count II (Declaratory Judgment)

Allstate argues that Spine Imaging has not satisfied the amount in controversy requirement for its declaratory judgment claim in Count II. Where a party seeks declaratory relief, the amount in controversy "is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347

(1977).  Allstate argues that "[w]ith regard to future medical treatments to be rendered by Plaintiff to Defendant Allstate's insureds, any claimed value would be highly speculative and extremely unreliable."  (Mem. in Supp. at 10, Docket No. 36.)  In response, Spine Imaging filed an affidavit stating that since January 1, 2005, it has generated gross revenue in excess of $8 million dollars, most of which comes from payment by no-fault insurers.  Spine Imaging claims that the defendants' failure to pay for their insured's legitimate claims has threatened Spine Imaging's viability and has cast Spine Imaging in a negative light.  (Bullon Aff., Docket No. 60.)

Given the allegations in the Amended Complaint and the affidavits submitted by Spine Imaging, the Court finds that Spine Imaging has satisfied the amount in controversy requirement for diversity jurisdiction.  A reasonable fact finder could conclude that defendants' continued refusal to pay for its insureds' claims will cause Spine Imaging damage in excess of $75,000.  *See Kopp*, 280 F.3d at 884.  Accordingly, the Court denies Allstate's motion to dismiss to the extent that it challenges the amount in controversy requirement.

### b.    Diversity of Citizenship

Although not raised by the parties, Spine Imaging fails to aver in its Amended Complaint the citizenship of Spine Imaging, L.L.C.'s members.  Section 1332 requires complete diversity of citizenship, which "exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship."  *Onepoint Solutions, LLC v.*

*Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). "An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members." *Id.*

Spine Imaging alleges that it is "a Minnesota LLC with its principal place of business at 393 North Dunlap Street, Suite LL40, St. Paul, Minnesota," and that defendants have their principal places of business in Massachusetts, Illinois, and Wisconsin. (Am. Compl. ¶¶ 10-14, Docket No. 45.) Without more, however, the Court cannot conclude that the parties to this action are completely diverse. Accordingly, the Court directs plaintiffs to properly plead the citizenship of all of Spine Imaging, L.L.C.'s members.

### 2. Minnesota Mandatory No-Fault Arbitration System

Allstate and American Family argue that the Court lacks subject matter jurisdiction over Spine Imaging's claims because the defendants' policyholders' claims are subject to Minnesota's Mandatory No-Fault Arbitration System. The Minnesota No-Fault Act provides for the "mandatory submission to binding arbitration of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or less . . . for no-fault benefits or comprehensive or collision damage coverage."[1] Minn. Stat. § 65B.525 subd. 1. This arbitration requirement cannot be waived, and the requirement deprives courts of subject matter jurisdiction over no-fault claims of $10,000 or less. *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 800 (Minn. 2004).

---

[1] Automobile insurers are only required to pay for medical expenses that constitute "reasonable and . . . necessary medical care." *See* Minn. Stat. § 65B.44(1)(b).

Spine Imaging responds that district courts have jurisdiction to decide "questions of law" such as whether Spine Imaging operates in violation of the corporate practice of medicine doctrine. Spine Imaging also argues that no-fault arbitrators do not have jurisdiction to decide if a health-care provider is operating in violation of the corporate practice of medicine doctrine.[2] Spine Imaging asserts that as a health-care provider, it is not a party to the no-fault benefits dispute and therefore is not subject to the Mandatory No-Fault Arbitration Act.

### a. Count I (Breach of Contract) and Count III (Unjust Enrichment)

The Minnesota No-Fault Act provides that claims must be submitted to mandatory arbitration "where the claim at the commencement of arbitration is in an amount of $10,000 or less against any insured's reparation obligor for no-fault benefits or comprehensive or collision damage coverage." Minn. Stat. § 65B.525. Thus, the Court must consider whether Spine Imaging's claims here are $10,000 or less and whether the claims are against an "insured's reparation obligor for no-fault benefits." Counts I and III satisfy those requirements.

As this Court has previously held, a health-care provider may not aggregate individually assigned claims in an effort to remove a case from the ambit of the

---

[2]    Spine Imaging argues that Allstate has taken an opposite position in no-fault arbitrations, stating that the application of the corporate practice of medicine doctrine is a question of law beyond the scope of the no-fault arbitration court. Allstate's position in the arbitration, even assuming that Spine Imaging properly characterizes it, is irrelevant to whether the Court has jurisdiction to hear these claims.

Minnesota No-Fault Statute. *Guzhagin v. State Farm Mut. Auto. Ins. Co.*, 566 F. Supp. 2d 962, 967 (D. Minn. 2008). The Court reiterated the Minnesota Supreme Court's statement that "**all** claims in an amount of $10,000 or less [must] be arbitrated." *Ill. Farmers Ins. Co.*, 683 N.W.2d at 805. Spine Imaging has not pleaded individual claims in its complaint and only argues that the aggregate of those claims is over $75,000, which is the statutory requirement in diversity of citizenship cases.

Moreover, Spine Imaging brought its breach of contract and unjust enrichment claims against defendants' policyholders' reparation obligors for no-fault benefits. Spine Imaging asserts that health-care providers are not parties to a no-fault arbitration and that Spine Imaging therefore may bring these claims seeking a declaration that its practice does not violate the corporate practice of medicine doctrine. Spine Imaging ignores that it has pleaded breach of contract and unjust enrichment claims, which are directly related to the insureds' claims for no-fault benefits. Indeed, the situation is similar to the facts in *Guzhagin*, where the plaintiff health-care-providers alleged "that by not reimbursing them for their services, State Farm[, the insurer,] breached its individual contracts with its insureds." *Guzhagin*, 566 F. Supp. 2d at 966. The Court concluded that the claim was "subject to mandatory arbitration [under the Minnesota No-Fault Act] – requiring the dismissal of these claims even if plaintiffs have the right to enforce the individual insurance contracts." *Id.* at 967.

Thus, Spine Imaging's breach of contract claims and unjust enrichment claims must be submitted to arbitration under the Minnesota No-Fault Act. As discussed in the next subsection, however, dismissal of those claims on that basis is not yet warranted.

### b. Count III: Jurisdiction to Declare that Spine Imaging Violates the Corporate Practice of Medicine Doctrine

Spine Imaging does not persuasively challenge defendants' argument that the factual issues in this case – e.g., whether the care rendered by Spine Imaging was reasonable and necessary, *see* Minn. Stat. § 65B.44 – must be decided by an arbitrator under the Minnesota No-Fault Act. Spine Imaging argues, however, that under the *Isles Wellness* cases, the Court has subject matter jurisdiction to determine the underlying legal issues in the case – that is, whether Spine Imaging is operating its practice in violation of the corporate practice of medicine doctrine and, if so, whether Spine Imaging did so knowingly and intentionally. (Pls.' Mem. in Opp'n to Mots. to Dismiss at 20, Docket No. 57.) The Court agrees.

The court of appeals in *Isles Wellness III* held that the insured "appropriately sought to resolve legal issues in the courts before obtaining a determination of the fact issues in arbitration." *Isles Wellness III*, 2009 WL 2928548, at *3. Moreover, *Isles Wellness I* and *Isles Wellness II* imply that courts may exercise initial subject matter jurisdiction over such cases to determine the applicability of the corporate practice of medicine doctrine.[3] Indeed, the *Isles Wellness* case dealt with claims for both declaratory relief **and** breach of contract.

---

[3] American Family cites *Great West Casualty Co. v. State Farm Mutual Automobile Insurance Co.*, 590 N.W.2d 675, 677 n.1 (Minn. Ct. App. 1999), for the proposition that "the distinction between legal and factual issues does not define the boundary between what is arbitrable and what is not . . . [but] merely defines the boundary between what issues decided by arbitrators are subject to *de novo* review and what issues are conclusively determined by

(Footnote continued on next page.)

Accordingly, the Court has subject matter jurisdiction to make initial determinations regarding the legal issues in the case prior to the claims' submission to arbitration. Because the Court's legal determinations underlie Spine Imaging's breach of contract and unjust enrichment claims, the Court denies Allstate and American Family's motions to dismiss on those grounds.

### 3. Standing

Allstate and American Family next challenge Spine Imaging's standing to bring its breach of contract or unjust enrichment claims. "Whether a plaintiff has standing to sue is the threshold question in every federal case, determining the power of the court to entertain the suit." *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005) (internal quotation marks omitted). Allstate and American Family assert that Spine Imaging does not have standing to bring breach of contract or unjust enrichment claims because Spine Imaging is not a party to the insurance contracts under which it seeks to recover. Allstate and American Family further argue that Spine Imaging has not alleged that the insured policyholders assigned their claims to Spine Imaging and that Spine Imaging is not a third-party beneficiary to the insurance contracts at issue.

---

(Footnote continued.)

arbitrators." (Am. Fam. Reply Mem. at 3, Docket No. 62.) *Great West*, however, does not hold that legal issues may not first be determined by a court where the claim's factual issues have not yet been resolved by the arbitrator.

Spine Imaging does not claim to be a party or an intended third-party beneficiary to the insurance contracts. Thus, the question before the Court is whether Spine Imaging adequately alleged that the insureds assigned their benefit claims to Spine Imaging.

"An assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." *Ill. Farmers Ins.*, 683 N.W.2d at 803. Spine Imaging claims that although it does not "explicitly us[e] the term 'assignment'" in the Amended Complaint, Spine Imaging "alleges generally that [it] is routinely reimbursed by defendants for the services it renders to defendants' insureds[.]" (Pls.' Mem. in Opp'n to Mots. to Dismiss at 28, Docket No. 57 (citing Am. Compl. ¶¶ 42-43, 49, 62, Docket No. 45).) As a result, Spine Imaging argues that under Rule 8 of the Federal Rules of Civil Procedure, Allstate and American Family were put on notice "that Spine Imaging was seeking reimbursement for claims that had been assigned to it by defendants' insureds." (Pl.'s Mem. in Opp'n to Mots. to Dismiss at 30, Docket No. 57.)

Spine Imaging's failure to specifically plead written assignments render the breach of contract and unjust enrichment claims implausible. Spine Imaging does not allege that defendants' policyholders assigned their claims to Spine Imaging, and such an allegation is a necessary element of Spine Imaging's standing to pursue the breach of contract and unjust enrichment claims. In other words, absent assignment by the policyholders, Spine Imaging does not have standing to bring these claims. The Court cannot reasonably infer from the Amended Complaint that the insureds provided Spine Imaging with written assignments of their claims. Further, because the element of standing is critical in these

circumstances, the Court dismisses those claims without prejudice and affords Spine Imaging leave to amend the complaint a second time.

### 4.    Ripeness

Allstate contends that Spine Imaging's claim for declaratory judgment is not ripe. A party may only bring a claim under the Declaratory Judgment Act if there is an "actual controversy." 28 U.S.C. § 2201. The ripeness doctrine precludes any decision on a legal or factual question absent "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted). The Declaratory Judgment Act requires the Court to apply a heightened standard, permitting judicial intervention only where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (internal quotation marks omitted).

Allstate argues that the Amended Complaint alleges only potential or speculative claims. In particular, Allstate contends that Spine Imaging does not plead that Allstate has denied bills from Spine Imaging on no-fault automobile insurance claims solely on the application of the corporate practice of medicine doctrine. Allstate also argues that Spine Imaging does not allege that Allstate has actually claimed that Spine Imaging is operating in violation of the corporate practice of medicine. In short, Allstate contends that there is no current dispute between Allstate and Spine Imaging. The Court disagrees.

Spine Imaging pleads that there is a substantial controversy between defendants and Spine Imaging for the purposes of the Declaratory Judgment Act:

> **Defendants have refused to pay Spine Imaging for its services, alleging that Spine Imaging is operating its medical-imaging practice in violation of the corporate practice of medicine doctrine**. . . . [T]here now exists between Spine Imaging and defendants an actual, present, genuine, and justiciable controversy regarding, among other things, whether (a) the physical taking of MRIs constitutes the practice of medicine; (b) Spine Imaging's practice of engaging independent contractors to provide the professional component of MRI services violates the corporate practice of medicine doctrine; and (c) Spine Imaging was or is knowingly and intentionally violating the corporate practice of medicine doctrine[.]

(Am. Compl. ¶ 70, Docket No. 45 (emphasis added).)

Accordingly, the Court denies Allstate's motion to dismiss to the extent it alleges that Spine Imaging has not pleaded a justiciable controversy.

### D.    Abstention

Allstate asks the Court to abstain from adjudicating the issues in the case in deference to litigation concerning the substance of an application of the corporate practice of medicine doctrine in Minnesota.   Allstate contends that abstention is appropriate to allow parallel litigation in Minnesota state court to determine the questions of Minnesota state law.

Federal courts may decline to exercise jurisdiction in "exceptional circumstances" where denying a federal forum would clearly serve an important countervailing interest, such as "regard for federal-state relations" and "wise judicial administration." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The Court may also abstain and dismiss a case if it "presents difficult questions of state law bearing

on policy problems of substantial public import whose importance transcends the result in the case then at bar," or if adjudication of the case in federal court "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996) (internal quotation marks omitted).

The Court concludes that abstention is not warranted. This case does not present particularly difficult questions, and the Minnesota Supreme Court has provided substantial guidance regarding the corporate practice of medicine. Further, the so-called parallel litigation in Minnesota, *Stand Up Mid-Am. MRI v. Allstate Ins. Co.*, No. A09-1108, 2010 WL 1440199 (Minn. Ct. App. Apr. 13, 2010), has been resolved and the insurer in that case did not file a petition with the Minnesota Supreme Court for further review.[4] Accordingly, the Court denies Allstate's motion to dismiss on these grounds.

### E.    More Definite Statement

Finally, Allstate asks the Court to order Spine Imaging to provide a more definite statement. Federal Rule of Civil Procedure 12 provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague and ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

---

[4]    The parties submitted letter briefs to the Court regarding *Stand Up Mid-Am. MRI*'s relevance to this case. Having read the court of appeals' decision and reviewed the parties' briefs, the Court concludes that the decision has no bearing on the Court's ruling at this stage of the litigation.

Allstate seeks a more definite statement identifying the policyholders whose services Allstate has allegedly refused to pay for and explaining Allstate's alleged position regarding the corporate practice of medicine doctrine. Aside from Spine Imaging's failure to adequately plead the policyholders' assignment of claims, Spine Imaging's Amended Complaint provides defendants with the requisite "short and plain statement" of Spine Imaging's claims. *See* Fed. R. Civ. P. 8(a); *Iqbal*, 129 S. Ct. at 1949. Accordingly, the Court denies Allstate's motion for a more definite statement.

## III. SPINE IMAGING'S MOTION TO DISMISS

Liberty filed counterclaims against Spine Imaging, seeking to recover approximately $108,000 previously paid to Spine Imaging for benefit claims before Liberty discovered that Spine Imaging was operating in violation of the corporate practice of medicine doctrine. (Answer to Am. Compl. & Counterclaims ¶¶ 95-99, Docket No. 46.) Liberty counterclaims (1) for a declaration that Spine Imaging is operating in violation of the corporate practice of medicine doctrine and that any obligations by Liberty to Spine Imaging are therefore void; (2) seeking recovery under Minn. Stat. § 65B.54 for benefits paid; and (3) for unjust enrichment and disgorgement. Spine Imaging filed a motion to dismiss those counterclaims. (Docket No. 67.)

Spine Imaging's motion and argument focus primarily on the merits of the case – whether it operates in violation of the corporate practice of medicine doctrine – and less on the counterclaims' sufficiency under *Iqbal*. That is, the majority of Spine Imaging's arguments are more appropriately addressed at summary judgment. At this stage of the

litigation, the sole question before the Court is whether Liberty has pleaded plausible claims for relief.

## A. Counterclaims

Under Minnesota Statute § 65B.54, Liberty "may bring an action to recover benefits which are not payable, but are in fact paid, because of an intentional misrepresentation of a material fact, upon which the reparation obligor relies, by the claimant or by a person providing products or services for which basic economic loss benefits are payable." Minn. Stat. § 65B.54 subd. 4. Liberty alleges that its prior payments to Spine Imaging "were not properly payable, but were paid to [Spine Imaging]." (Answer to Am. Compl. & Counterclaims ¶ 121, Docket No. 46.) Liberty alleges that Spine Imaging "presented itself as a legitimate practitioner of the healing arts when it submitted claims for reimbursement to [Liberty], even though it was then in violation" of the corporate practice of medicine doctrine. (*Id.* ¶ 122.) Liberty alleges that it relied on Spine Imaging's misrepresentation that it was a legitimate practitioner in paying benefits submitted for reimbursement. (*Id.* ¶ 123.) Liberty relies on those allegations in alleging its unjust enrichment and disgorgement claims. (*Id.* ¶¶ 125-28.)

### 1. "Knowing and Intentional Violation of the Corporate Practice of Medicine" (Claims for Recovery of Benefits and Unjust Enrichment)

Spine Imaging argues that the Court should dismiss Liberty's counterclaims because Liberty does not allege that Spine Imaging knowingly and intentionally operated its diagnostic imaging facility in violation of the corporate practice of medicine doctrine.

*See Isles Wellness II*, 725 N.W.2d at 95. Moreover, Spine Imaging asserts that Liberty could not make such a claim because, to date, "no Minnesota appellate court has held that the corporate practice of medicine doctrine applies to prohibit the provision of diagnostic imaging services by a lay owned business entity." (Mem. in Supp. at 25-26, Docket No. 68.)

Liberty alleges, *inter alia*, that Spine Imaging "made material misrepresentations," "concealed and did not disclose its unlawful ownership structure and improper relationships with consulting radiologists," and made a "false assertion that it was a legitimate practitioner of healing arts." (Answer to Am. Compl. & Counterclaims ¶¶ 46, 100, 111-12, Docket No. 46.) Taking the facts pleaded as true and granting Liberty the benefit of all reasonable inferences, Liberty has pleaded sufficient facts to establish that Spine Imaging was knowingly and intentionally operating in violation of the corporate practice of medicine doctrine. Spine Imaging's second argument, that the doctrine's applicability to Spine Imaging is undetermined and that the general applicability of the doctrine was in doubt until 2005, is only properly advanced once the parties have conducted discovery and the facts relating to Spine Imaging's business are established.

### 2. Claim for Recovery of Benefits Under Rule 9(b)

Spine Imaging also argues that Liberty has not pleaded its § 65B.54 claim with particularity, as required by Federal Rule of Civil Procedure 9(b). Specifically, Spine Imaging asserts that Liberty does not allege the "who, what, when, where, and how" to

sustain Liberty's allegation that Spine Imaging made an intentional misrepresentation of material fact on which Liberty relied.

Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Here, Liberty has pleaded that Spine Imaging made misrepresentations to Liberty that it was legally operating a healing practice in an attempt to obtain payment for services provided to policyholders. Although Liberty may generally aver Spine Imaging's knowing and intentional violation of the corporate practice of medicine doctrine, Liberty does not plead who made the misrepresentations to Liberty or how the misrepresentations were made. The Court must assume from the pleadings that Spine Imaging perpetrated the fraud simply by seeking payments from Liberty, but Liberty does not clearly allege that basis in the counterclaims. As a result, Liberty's counterclaim under Minn. Stat. § 65B.54 does not satisfy Rule 9(b)'s requirements. Accordingly, the Court dismisses the counterclaim under § 65B.54 without prejudice and grants Liberty leave to amend.

**B.     Spine Imaging's Merits Arguments**

Spine Imaging expends considerable effort discussing the merits of Liberty's counterclaims – arguing it is not operating in violation of the corporate practice of medicine doctrine – and discusses facts not alleged in Liberty's counterclaims. Spine Imaging argues, *inter alia*, that various Minnesota Statutes imply that lay persons may operate a diagnostic testing facility under the technical component/physical component dynamic without running afoul of the corporate practice of medicine doctrine and that the

public policy considerations outlined by the Minnesota Supreme Court support a conclusion that Spine Imaging is not operating in violation of the doctrine.

At this stage of the litigation, however, the Court accepts Liberty's allegations as true, and the allegations are sufficient to support a majority of Liberty's counterclaims, excepting the claims that must be pleaded with particularity as discussed above.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Allstate's Motion to Dismiss for Lack of Jurisdiction [Docket No. 34] is **GRANTED in part** and **DENIED in part** as follows:

   a.     Allstate's Motion is **GRANTED** as to the issue of Spine Imaging's standing to bring claims for breach of contract as alleged in Count I and unjust enrichment as alleged in Count III.  Those claims, as alleged against Allstate, are **DISMISSED without prejudice**.

   b.     Allstate's motion is **DENIED** in all other respects.

2.     American Family's Motion to Dismiss Under Rule 12 [Docket No. 40] is **GRANTED in part** and **DENIED in part** as follows:

   a.     American Family's Motion is **GRANTED** as to the issue of Spine Imaging's standing to bring claims for breach of contract as alleged in Count I and unjust enrichment as alleged in Count III.  Those claims, as alleged against American Family, are **DISMISSED without prejudice**.

b.      American Family's motion is **DENIED** in all other respects.

3.      Spine Imaging may file an amended complaint within thirty (30) days of the filing of this Order addressing the inadequacies discussed above.  Spine Imaging is directed to respond to the Court's inquiry into the citizenship of Spine Imaging, L.L.C.'s members.

4.      Spine Imaging's Motion to Dismiss Liberty Mutual Fire Insurance Company's Counterclaims [Docket No. 67] is **GRANTED in part** and **DENIED in part** as follows:

a.      Spine Imaging's motion is **GRANTED** as to Count II because Liberty has failed to plead its fraud claim with particularity.  That claim is **DISMISSED without prejudice**.

b.      Spine Imaging's motion is **DENIED** in all other respects.

5.      Liberty may file an amended complaint within thirty (30) days of the filing of this Order addressing the inadequacies discussed above.

DATED:  September 30, 2010                    _____s/_John n. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                                   United States District Judge