## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| SPINE IMAGING MRI, L.L.C., a Minnesota limited liability company, <br>               Plaintiff, | Civil No. 09-1963 (JRT/AJB) |
| v. | |
| LIBERTY MUTUAL INSURANCE COMPANY; ALLSTATE INSURANCE COMPANY; and AMERICAN FAMILY MUTUAL INSURANCE COMPANY, <br>               Defendants. | **MEMORANDUM OPINION AND ORDER** |
| LIBERTY MUTUAL INSURANCE COMPANY, and ALLSTATE INSURANCE COMPANY, <br>               Counterclaim Plaintiffs, | |
| v. | |
| SPINE IMAGING MRI, L.L.C., <br>               Counterclaim Defendant. | |
| LIBERTY MUTUAL INSURANCE COMPANY, <br>               Third Party Plaintiff, | |
| v. | |
| EDUARDO BULLON, RAFAEL MENDEZ, CENTRAL MEDICAL CLINIC, L.L.C., DR. ALFONSO MORALES-UTRILLA, NORTHSTAR RADIOLOGY CORPORATION, P.A., DR. WILLIAM FORD, and DR. HANS MICHAEL CASTRO, <br>               Third Party Defendants. | |

Eric C. Tostrud, David W. Asp, and Matthew R. Salzwedel, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401-2179, for plaintiff/counterclaim defendant Spine Imaging, MRI, L.L.C., and third-party defendants Eduardo Bullon, Rafael Mendez, Central Medical Clinic, LLC, Dr. Alfonso Morales-Utrilla, and Dr. Hans Michael Castro.

Sharie L. Lowden and Michael W. Lowden, **LOWDEN LAW FIRM**, 4737 County Road 101, Suite 304, Minnetonka, MN 55345, for defendant/counterclaim plaintiff Liberty Mutual Insurance Company.

Bradley L. Doty, Richard S. Stempel, Robert J. Anthonsen, and Steven P. Pope, **STEMPEL & DOTY PLC**, 41 Twelfth Avenue North, Hopkins, MN 55343, for defendant/counterclaim plaintiff Allstate Insurance Company.

Paula Duggan Vraa, Mark A. Solheim, and Hilary J. Loynes, **LARSON KING, LLP**, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101-4922, for defendant American Family Mutual Insurance Company.

Alyson M. Palmer and Donald Chance Mark, Jr., **FAFINSKI MARK & JOHNSON, PA**, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344, for third-party defendants Northstar Radiology Corporation, P.A. and Dr. William Ford.

Plaintiff Spine Imaging MRI, L.L.C. ("Spine Imaging") provides medical imaging services to individuals with neck and spine injuries. Spine Imaging brought the instant action against defendant-insurers Liberty Mutual Fire Insurance Company ("Liberty"), Allstate Insurance Company ("Allstate") and American Family Mutual Insurance Company ("American Family") (collectively, "defendants"), alleging claims for breach of contract, declaratory judgment, and unjust enrichment arising out of defendants' refusal to pay for medical imaging services provided by Spine Imaging to defendants' policyholders. Liberty and Allstate filed counterclaims seeking a declaration that Spine

Imaging is knowingly operating in violation of the corporate practice of medicine doctrine ("CPMD") and seeking recovery of benefits paid to Spine Imaging.  American Family did not file any counterclaims.  Liberty filed a third-party complaint against several other individuals and businesses ("third-party defendants") associated with Spine Imaging, asserting the same claims as the counterclaims against Spine Imaging.  Before the Court is Spine Imaging's motion to dismiss Allstate's counterclaims, third-party defendants' and Spine Imaging's motions to dismiss Liberty's claims and counterclaims, and American Family's motions for summary judgment and sanctions.  Because the Court finds the declaratory judgment sought by all defendants is the obverse to that sought by Spine Imaging, those counterclaims are dismissed.  The Court also determines that Liberty's counterclaims and third-party claims as they plead fraud, recovery of benefits, and unjust enrichment are sufficient to survive a motion to dismiss, however the claim of champerty/maintenance fails to state a claim.  Finally, because the Court finds no controversy exists between American Family and Spine Imaging, the Court dismisses the claims without prejudice for lack of subject matter jurisdiction but denies sanctions because Spine Imaging had a good faith reason to believe one existed.

## BACKGROUND

Spine Imaging provides magnetic-resonance imaging ("MRI") to assist physicians and chiropractors in the diagnosis and treatment of various medical conditions, with a specific focus on the neck and spine.  (Second Am. Compl. ¶ 18, Docket No. 103.)  MRI technology provides images of the human body that can be used to assist in diagnosing

various medical conditions and to assess the most effective course of treatment. (*Id.* ¶ 21.)

Spine Imaging alleges that there are two steps to providing medical imaging services. The first step, the "technical component," "involves physically taking the MRI scan itself. This first step is a mechanical process that can be performed by trained MRI technicians[,]" which Spine Imagine employs. (*Id.* ¶ 25.) The second step, the "professional component," "involves interpreting the image that results from the MRI scan [which] must be performed by a licensed physician or chiropractor." (*Id.* ¶ 26.) Spine Imaging claims it only provides the technical component of the MRI services, but maintains "independent-contractor relationships with board certified radiologists, neuroradiologists, and skeletal radiologists, who provide patients with interpretational MRI services and prepare summary reports." (*Id.* ¶ 28.)

Spine Imaging concedes that it is not owned or operated by a licensed physician or chiropractor, and also avers that it does not employ licensed physicians or chiropractors as part of its medical imaging services. (*Id.* ¶¶ 19-20.) Spine Imaging is solely owned and operated by Eduardo Bullon. (*Id.* ¶ 19.) Spine Imaging actively markets its services to the chiropractic community to provide services to individuals who have suffered neck and spine injuries in automobile accidents. (*Id.* ¶ 31.) Spine Imaging's services have been in demand. (*Id.* ¶¶ 32-41.)

In Minnesota, "no-fault" automobile insurance covers the cost of treatment for most accident victims. (*Id.* ¶ 42.) Defendants all provide "no-fault" automobile insurance in Minnesota, and some of Spine Imaging's clients have insurance policies

with defendants and have received reimbursement from defendants for MRI services provided by Spine Imaging.  (*Id.* ¶ 43.)  In spring 2009, Spine Imaging alleges defendants ceased reimbursing it for MRIs provided to defendants' policyholders.  (*Id.* ¶ 49.)  Spine Imaging brought this action, alleging breach of contract and unjust enrichment, and seeking a declaratory judgment that it was not violating CPMD.

In September 2010, this Court granted in part and denied in part defendants' motions to dismiss without prejudice on Spine Imaging's contract and unjust enrichment claims.  It granted the motions, in part, on the basis that Spine Imaging failed to allege that it had received written assignments from policyholders such that Spine Imaging had standing to sue the insurers.  *Spine Imaging MRI, L.L.C. v. Liberty Mut. Ins. Co.*, 743 F. Supp. 2d 1034, 1045 (D. Minn. 2010).  Spine Imaging filed a second amended complaint which addressed this deficiency.  (*See* Second Am. Compl. ¶¶ 44-46, Docket No. 103.)

Liberty answered the Second Amended Complaint and renewed its counterclaims for a declaratory judgment that Spine Imaging was in violation of the CPMD as a result of violations of the Minnesota Professional Firms Act, recovery of benefits, or, in the alternative, unjust enrichment.  Spine Imaging moved to dismiss the counterclaims for lack of particularity, and the Court granted Liberty leave to amend.  (Docket No. 98.)  In so amending, Liberty added claims of violation of state and federal anti-kickback laws, and champerty/maintenance.  (Docket No. 107.)  Spine Imaging now moves to dismiss, claiming the new counterclaims impermissibly expand the scope of litigation beyond the leave granted by the Court and that the counterclaims fail to state a claim.

Liberty also brought a third-party complaint against individuals and organizations that worked with Spine Imaging: Eduardo Bullon, Rafael Mendez, Central Medical Clinic, LLC, Dr. Alfonso Morales, Northstar Radiology, Dr. William Ford, and Dr. Hans Michael Castro.   (Third-Party Compl., Docket No. 126.)   The third-party complaint alleges the same claims as the counterclaims against Spine Imaging.   The third-party defendants move to dismiss those claims on the same bases.

In response to Spine Imaging's Second Amended Complaint, Allstate brought counterclaims seeking a declaratory judgment that Spine Imagine is violating the CPMD and requesting attorney's fees and costs.   (Allstate Countercl. ¶¶ 24-25, Docket No. 106.) Spine Imaging moves to dismiss the counterclaims.

Finally, American Family seeks summary judgment on Spine Imaging's claims, asserting that it has never denied a claim on the basis of a violation of the CPMD, therefore any litigation over denial of benefits belongs in arbitration as required by the state No-Fault Act.   Further, it seeks Rule 11 sanctions, alleging that Spine Imaging had no factual basis to bring the claims against it.

## ANALYSIS

## I.      STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party.   *See, e.g., Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002).   To survive a motion to dismiss, however, a complaint must provide

more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).   That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted).   At the motion to dismiss stage, the record for review before the Court is generally limited to the complaint, some matters that are part of the public record, and any documents attached as exhibits that are necessarily embraced by the complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## II.   ALLSTATE'S COUNTERCLAIMS

Spine Imaging moves to dismiss Allstate's counterclaims for a declaratory judgment.  It argues that where a "proposed counterclaim and the plaintiffs' claim raise identical factual and legal issues[, the] proposed counterclaim is redundant and will be moot upon disposition of the plaintiffs' claims.  A redundant declaratory judgment claim is not a proper declaratory judgment claim and should be dismissed." *Mille Lacs Band of*

*Chippewa Indians v. State of Minn.*, 152 F.R.D. 580, 582 (D. Minn. 1993) (citing *Aldens,*

*Inc. v. Packel*, 524 F.2d 38, 51-51 (3d. Cir. 1975)).

Allstate argues that the Court should be guided instead by courts that have found

an action for a declaratory judgment, if denied, would not resolve all the issues between

the parties.   *See, e.g.*, *Altvater v. Freeman*, 319 U.S. 359, 363 (1943) (finding a

counterclaim regarding a patent's validity was appropriate when the original claim was

whether a patent was infringed upon); *Iron Mountain Sec. Storage Corp. v. Am. Specialty*

*Foods, Inc.*, 457 F. Supp. 1158, 1162 (E.D. Pa. 1978) (holding that a counterclaim

seeking one interpretation of a contract was not redundant to the original claim seeking a

different interpretation).   However,  a declaratory judgment is a declaration of "the rights

and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought."   28 U.S.C. § 2201(a).   Therefore, a contract or

patent, which are capable of multiple of interpretations, are not analogous to a declaratory

action.   Here, a declaration of the rights of Spine Imaging related to the CPMD raises

identical factual and legal issues as the declaration requested by Allstate.   As a result, the

Court dismisses the counterclaim for a declaratory judgment because it is redundant.

Allstate further counterclaims for attorneys' fees and costs alleging Spine Imaging

brought the instant lawsuit without appropriate factual basis . . . ."   (Answer and

Countercl. ¶ 25, Docket No. 106).   Such a claim amounts to a claim under 28 U.S.C.

§ 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably

and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct.").   Such

attorneys' fees and costs are available after determination of the underlying claim. *See* 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights **have been determined** by such judgment." (emphasis added)).  Therefore, such a counterclaim is premature prior to adjudication.  "One pursues § 1927 relief, then, through an attorney fee petition, not a counterclaim."  *Carbajal-Ramierez v. Bland Farms, Inc.*,  234 F. Supp. 2d 1353, 1355 (S.D. Ga. 2001) (citing *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 914 n.3 (11th Cir. 1982)).[1]  Therefore, the Court dismisses Allstate's counterclaim for attorneys' fees and costs.

## III.    MOTIONS TO DISMISS LIBERTY'S CLAIMS AND COUNTERCLAIMS

In the Court's previous Order, the Court dismissed and then granted Liberty leave to amend its counterclaim for recovery of benefits under Minnesota Statute § 65B.54 because Liberty had not sufficiently pled "who made the misrepresentations to Liberty or how the misrepresentations were made."  *Liberty Mut. Ins. Co.*, 743 F. Supp. 2d at 1049. In its amended counterclaims, Liberty asserts five counterclaims, two of which were not in its previous pleading:  violation of state and federal anti-kickback laws and maintenance/champerty.   Liberty asserts the same claims against all third-party defendants.

---

[1] The Court has the right to award fees in a diversity action for declaratory relief whether brought under federal or state law.  *See, e.g.*, *Gant v. Grand Lodge of Tex.*, 12 F.3d 998, 1003 (10th Cir. 1993) (citing 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2771, at 767 (3d ed.)).  However, the Court determines that such relief is also best pursued in a motion for fees at the conclusion of the case rather than asserted as a counterclaim. *See* D. Minn. L.R. 54.3.

Spine Imaging asserts that the new counterclaims should be dismissed since Liberty did not seek leave to add then, and the new counterclaims expand the scope of the litigation.   Further, the third-party defendants and Spine Imaging argue that the Minnesota Professional Firms Act ("MPFA") and anti-kickback laws do not give a private right of action and the claims and counterclaim of maintenance/champerty fail to allege the elements of the cause of action.   They also seek dismissal of the § 65B.54 and unjust enrichment claims and counterclaims on the basis that they are not pled with sufficient particularity.

## A.      Declaratory Judgment, MPFA, and Anti-Kickback Laws

Liberty's counterclaim for a declaratory judgment fails as the obverse of Spine Imaging's declaratory judgment claim, as described above regarding Allstate's similar counterclaim.   However, the same is not true for the declaratory judgment claims against third-party defendants, since they were not a party to Spine Imaging's complaint.   The Court, therefore, addresses the other arguments that Spine Imaging and third-party defendants have raised: that Liberty's claims and counterclaim for a declaratory judgment fails since there exists no private right of action under the MPFA or federal and state anti-kickback laws.

Neither the MPFA nor the state and federal anti-kickback laws have an express private right of action.   Minn. Stat. §§ 319B.01-.12, .40; 42 U.S.C. § 1320a-7b; Minn. Stat. § 62J.23.   Absent an explicit private cause of action in a statute, courts can imply a right of action if "it can be determined by clear implication."   *Becker v. Mayo Found.*,

737 N.W.2d 200, 207 (Minn. 2007).  A statute implies a private cause of action when: 1) the plaintiff belongs to the class for whose benefit the statute was enacted; 2) the legislature indicated an explicit or implicit intent to create a civil remedy; and 3) implying a civil remedy would be consistent with the underlying purposes of the legislative enactment.  *See id.* at 207 n.4 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). Supreme Court rulings have indicated that legislative intent is the central factor for determining if a private cause of action exists through implication.  *E.g.*, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979).  Further, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979).

Courts have held that none of the three statutes at issue have an implied private right of action.  *Mut. Serv. Cas. Ins. Co. v. Midway Massage, Inc.*, 695 N.W.2d 138, 142-43 (Minn. Ct. App. 2005) (finding no private right of action in the MPFA); *W. Allis Mem'l Hosp., Inc. v. Bowen*, 852 F.2d 251, 255 (7th Cir. 1988) (finding no private right of action in federal anti-kickback laws); *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, No. 09-3681, 2011 WL 692909, at *10 (D. Minn. Feb. 16, 2011) (finding no private right of action in state anti-kickback laws).

While third-party defendants and Spine Imaging repeatedly cite *Midway Massage* as support for the proposition that 1) there is no private right of action for violation of the MPFA, therefore 2) declaratory relief is not available, a closer look at *Midway Massage* indicates that its holding is severely called into question by the Minnesota Supreme

Court's holdings in the *Isles Wellness* cases.   In a footnote in *Midway Massage*, the Minnesota Court of Appeals noted that the complaint at issue had contained a claim that Midway Massage violated the CPMD.   *Midway Massage, Inc.*, 695 N.W.2d at 142 n.2. The court stated that since it had found in *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 689 N.W.2d 561 (Minn. Ct. App. 2004), that chiropractic doctors, physical therapists, and massage therapists **could not** violate the CPMD – and further questioned whether the doctrine actually existed in Minnesota – the insurer had failed to state a claim.   *Midway Massage, Inc.*, 695 N.W.2d at 142 n.2.   The Court then went on to find that, since for declaratory relief there must exist an underlying cause of action, and one did not exist on the MPFA alone, declaratory relief was unavailable.   *Id.* at 143.

However, on appeal, the Minnesota Supreme Court overturned the Court of Appeals' *Isles Wellness* decision and found, the CPMD **was** a viable claim in Minnesota and that it was applicable to chiropractic doctors, since the CPMD "is [not] limited to medicine and . . . appl[ies] to other branches of the healing arts."   *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 703 N.W.2d 513, 522 (Minn. 2005) [hereinafter *Isles Wellness I*].   Therefore, in addition to the fact that this Court is only bound by Minnesota Supreme Court interpretations of state law, *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006), the Court also notes that *Midway Massage* **is heavily premised on the absence of a cause of action for CPMD in Minnesota**, which the Minnesota Supreme Court subsequently ruled **does** exist.

The Court agrees that *Midway Massage* correctly determined no implied private right of action exists for the MPFA **alone**, and *Isles Wellness I* did not overturn that

holding.   However, a violation of the MPFA could be the basis of a violation of the CPMD.   The Minnesota Supreme Court, in its second *Isles Wellness* case, *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 95 (Minn. 2006), advised that courts should determine if a "corporation's actions show a knowing and intentional failure to abide by state and local law" for a CPMD claim.   Clearly one such failure to abide could involve a knowing violation of the MPFA or anti-kickback laws.   As a result, the declaratory judgment at issue in this case may well center on whether Spine Imaging knowingly violated these laws, as asserted in Liberty's claims against the third-party defendants.

### 1.    MPFA

The MPFA provides that "[o]wnership interests in a professional firm may not be owned or held, either directly or indirectly, except by . . . professionals who, with respect to at least one category of the pertinent professional services, are licensed and not disqualified . . . ."   Minn. Stat. § 319B.07.   The Act advises: "Individuals who furnish professional services pursuant to a license, registration, or certificate issued by the state of Minnesota to practice medicine . . . [and] chiropractic [services]. . . are specifically authorized to practice any of these categories of services . . . **if the individuals are organized under this chapter**."   *Id.* § 319B.40 (emphasis added).   Therefore, physicians, chiropractors, or other professionals who practice their profession in knowing violation of the MPFA may also be operating in violation of the CPMD.

The corporate third-party defendants assert, without citation, that they cannot be in violation of the MPFA because record lay ownership is the only relevant consideration under the CPMD and they have record professional ownership.  However, the MPFA includes the word "indirect," implying that record ownership may not be dispositive.  *See* Minn. Stat. § 319B.07.  Furthermore, the basis of the CPMD doctrine in Minnesota, *Granger v. Adson*, 250 N.W. 722 (Minn. 1933), involved a lay owned business that had a contract with a medical doctor to provide health audits to customers.  *Id.* at 722.  The Minnesota Supreme Court determined that "[w]hat the law intends is that the patient shall be the patient of the licensed physician not of a corporation or layman.  The obligations and duties of the physician demand no less.  There is no place for a middleman."  *Id.* at 723.  Here, the allegations are of just such a middleman:  even though the record ownership of the corporate third-party defendants complies with the law, the allegations are that lay people are driving the treatment decisions.  As a result, the Court finds this argument unpersuasive at this stage of the litigation.

### 2.    Anti-kickback laws

As  to the claims and counterclaim of a violation of federal and state anti-kickback laws, Liberty has alleged no payment to a federal health care program, which is required under 42 U.S.C. § 1320a-7b.  Therefore, the claims and counterclaim regarding a violation of the federal anti-kickback law are dismissed.  Minnesota's anti-kickback statute "restrict[s] financial relationships or payment arrangements involving health care providers under which a person benefits financially by referring a patient to another

person, recommending another person, or furnishing or recommending an item or service." Minn. Stat. § 62J.23. The statute explicitly refers to the federal anti-kickback law as the guidepost for analysis of an action under state law. *Id.*

The third-party defendants and Spine Imaging assert that Liberty's claims and counterclaim under the Minnesota anti-kickback statute fails because there is no private right of action to enforce that statute. *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, No. 09-3681, 2011 WL 692909, at *10 (D. Minn. Feb. 16, 2011). However, the Court in *Linea Latina* recognized that Minnesota courts had allowed claims for breach of contract to proceed in light of the statute. *Id.* (citing *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 671 N.W.2d 213 (Minn. Ct. App. 2003)). The court in *Alpha Real Estate* acknowledged that a contract that violates public policy, such as the anti-kickback provisions of § 62J.23, can be declared illegal and void. *Id.* at 217. A plaintiff must allege a "knowing and willful" violation of the statute in order to bring a breach of contract claim, which Liberty has done.

By analogy, given federal anti-kickback law is the guidepost for state law, the Court finds instructive case law linking an alleged violation of the federal law to the federal false claim laws. Federal courts analyzing the federal law have found an alleged violation of the anti-kickback statute sufficient to state a claim under the False Claims Act. *See, e.g.*, *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 258, 266 (D.D.C. 2002) ("[T]he government would not have paid the claims submitted if it had known of the alleged kickback . . . violations [which are] sufficient to state a False Claims Act claim, [because] compliance with those laws [are] material to the

government's contract with (or indirectly with) the defendants."). The allegations here mirror the facts and arguments in *Pogue*: had the insurers known of the illegality they allege, they would not have paid the claims.

Therefore, for the same reason a knowing violation of the MPFA could establish a violation of the CPMD, a knowing violation of the state anti-kickback law could also be dispositive of the declaratory action at issue. Despite dismissing the MPFA and anti-kick-back counterclaims against Spine Imaging as the obverse of the declaratory judgment claim that initiated this action, the Court is mindful that discussion of the MPFA and state anti-kickback laws will be central to a determination of the merits of the declaratory judgment and are salient to Liberty's claims against the third party defendants.

### B.    Recovery of Benefits and Unjust Enrichment

Spine Imaging and the third-party defendants also seek dismissal of the § 65B.54 and unjust enrichment claims and counterclaims on the basis that they are not pled with sufficient particularity. In the Court's previous Order, the Court found: "Liberty [did] not plead who made the misrepresentations to Liberty or how the misrepresentations were made. The Court must assume from the pleadings that Spine Imaging perpetrated the fraud simply by seeking payments from Liberty, but Liberty does not clearly allege that basis in the counterclaims." *Liberty Mut. Ins. Co.*, 743 F. Supp. 2d at 1049. In its amended complaint, Liberty more clearly articulates that the seeking of payment was the fraud. (*See* Second Am. Ans. ¶¶ 147-49, Docket No. 107.) For example, Liberty alleges,

"[p]laintiff intentionally presented itself as an authorized and legitimate practitioner of the healing arts when it submitted (89) claims for reimbursement of medical expenses to Liberty using the HCFA 1500 form, even though it was operating in violation of Minnesota['s] CPMD and Minnesota's Professional Firms Act." (*Id.* ¶ 147.)

Spine Imaging and the third-party defendants argue the amended pleading is insufficient. However, the purpose of pleadings, even in the fraud context, is to give the defendants notice of the behavior. "[R]ule [9(b) is interpreted] in harmony with the principles of notice pleading, [such that the] higher degree of notice is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). The fraud alleged for the § 65B.54 claims and counterclaim is based on Spine Imaging and the third-party defendants submitting the HCFA 1500 forms representing entitlement to payment, when violations of the CPMD and state anti-kickback laws may mean no such entitlement existed. These allegations in the amended pleading provide sufficient notice under Rule 9(b). Therefore, the Court does not dismiss these claims and counterclaim. Further, because unjust enrichment is an alternative theory for the same relief, the Court also does not dismiss these claims and counterclaim.

## C.    Champerty/Maintenance

The third-party defendants and Spine Imaging seek dismissal of Liberty's champerty/maintenance claims and counterclaim asserting that Liberty has not pled sufficient facts to state a claim. Champerty/maintenance "gives a nonparty an

impermissible interest in a suit, impedes the settlement of the underlying case, and promotes speculation in lawsuits . . . ." *Johnson v. Wright*, 682 N.W.2d 671, 679 (Minn. Ct. App. 2004) (citing *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 220 (Ohio 2003)).   Typically, when champerty/maintenance occurs, the nonparty has advanced fees for a litigant or otherwise "encourages, promotes, or extends litigation." *Rancman*, 789 N.E.2d at 220.   Here, Spine Imaging has sought a declaration of its own rights so that it may receive payment on claims legally assigned to it.   Therefore, the Court finds the claims and counterclaim do not sufficiently allege the elements of this cause of action and dismisses them.

## IV.   AMERICAN FAMILY'S MOTIONS

American Family moves for summary judgment asserting that Spine Imaging has failed to produce any facts to indicate American Family has been denying claims on the basis of the CPMD.   It avers that it is not the policy of American Family to deny claims on that basis; rather, American Family claims its denials have been based on a lack of demonstrated medical necessity.   As a result, it argues the claims belong in arbitration pursuant to the No-Fault Act.   *See* Minn. Stat. § 65B.525, subd. 1.   Spine Imaging asserts two facts in support of its claim against American Family: the first is an affidavit from Spine Imaging owner, Eduardo Bullon, asserting that an attorney for some of Spine Imaging's patients had heard American Family lawyers asserting violation of the CPMD as an alternative basis for denying claims in arbitration.   (Decl. of Eduardo Bullon ¶ 7, May 12, 2011, Docket No. 193.)   The second is that the reimbursement rate for American

Family on Spine Imaging claims (27%) is closer to that of Liberty (19%) than to other insurance companies.  Because Liberty has expressly claimed violation of the CPMD as the reason for its denial of claims, Spine Imaging argues the comparative reimbursement rate is indicative of a similar policy.  While there has been no discovery, American Family asserts the facts are in the possession of Spine Imaging such that summary judgment is not premature.  Spine Imaging argues the opposite – because it is not a party to claims arbitration, it can have no firsthand knowledge of the reasons given for denial of claims in that setting.  American Family asserts that it did an internal review and can find no claim that was denied on the basis of the CPMD.

"The Eighth Circuit has noted that the '[r]elative availability of evidence to the parties is a circumstance to be considered in determining [summary judgment].'" *Modtland v. Mills Fleet Farm, Inc.*, No. 04-3051, 2004 WL 2730100, at *3 (D. Minn. Nov. 28, 2004) (first alteration original) (citing *Spencer v. Kroger Co.*, 941 F.2d 699, 704 (8th Cir. 1991)).  Therefore, summary judgment is inappropriate where the moving party controls the information that may be dispositive of a claim.  *Id.*  Aside from the Bullon affidavit, which is hearsay, *see* Fed. R. Civ. P. 56(e), Fed. R. Evid. 801(c), Spine Imaging has no other support for the proposition that American Family has, in fact, been asserting the CPMD as a primary basis for the denial of claims.

Without determining who has control of the evidence regarding the reason for the low reimbursement rate of claims, the Court finds the claim fails to present a justiciable controversy and therefore is more properly dismissed without prejudice.  The Declaratory Judgment Act, Minn. Stat. §§ 555.01 *et seq.*, requires an underlying controversy.  *See*

*Essling's Homes Plus, Inc., v. City of St. Paul*, 356 F. Supp. 2d 971, 984 (D. Minn. 2004) ("A successful action for declaratory judgment requires a viable underlying cause of action."). "[O]nly parties with **legal interests threatened in an actual controversy** have standing to sue under the Declaratory Judgment Act." *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990) (emphasis added).

Because Spine Imaging asserts American Family is denying claims on the basis of the CPMD while American Family represents that it is not, the Court has no subject-matter jurisdiction on the claim. Spine Imaging argues that this Court, in a previous Spine Imaging case, has already determined that its claims regarding non-payment on the basis of an alleged violation of the CPMD confer jurisdiction under the federal Declaratory Judgment Act. *See Spine Imaging MRI, L.L.C. v. Country Cas. Ins. Co.*, No. 10-480, 2011 WL 379100, at *4 (D. Minn. Feb. 1, 2011) ("The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former **no actual wrong need have been committed or loss have occurred in order to sustain the action**." (emphasis original) (citing *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004))). However, distinguishable from the instant case, in *Country Casualty*, the defendant was demanding repayment and asserting that Spine Imaging was in violation of the CPMD. *Id.* Such is not the case here because American Family asserts it has not denied claims based on CPMD and has not raised it as an affirmative defense. (*See* Answer, Docket No. 105.) Therefore, *Country Casualty* is unavailing. Because there is no actual controversy, the Court does not have subject matter

jurisdiction, and dismissal without prejudice is warranted.  *Pinnavaia v. Nat. Arbitration Forum, Inc.*, 122 Fed. App'x 862, 863 (8th Cir. 2004) ("Article III prevents federal courts from dismissing case with prejudice where subject matter jurisdiction is lacking." (citing *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123-24 (2d Cir. 1999)).[2]

While American Family asserts that the lack of an actual controversy, and the failure of Spine Imaging to provide an evidentiary basis for its claims, is cause for Rule 11 sanctions, the Court disagrees.  Given the low reimbursement rate of American Family, the sheer volume of insurance companies with which Spine Imaging is involved in litigation on these issues, and the fact that Spine Imaging believed the evidence to be in the hands of American Family, Spine Imaging had a sufficient evidentiary basis to file a claim.  *See* Fed. R. Civ. P. 11(b) (noting that sanctions are not warranted if "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

In sum, the Court finds that the declaratory judgments sought by Allstate and Liberty are redundant of the judgment sought by Spine Imaging and thus fail, but that claims asserted against the third-party defendants does not.  Allstate's counterclaim for attorneys' fees and costs is premature and dismissed without prejudice.  Liberty's claims and counterclaims of violations of the federal anti-kickback laws and

---

[2] This conclusion is bolstered by the behavior of the parties: they have been discussing dismissal for several months, but been unable to agree to the precise terms, indicating they both agree that there is no controversy between them.

champerty/maintenance fail to allege necessary elements of the causes of action. However, all other claims are sufficiently pled. Finally, there exists no controversy between American Family and Spine Imaging for this Court to have jurisdiction, but sanctions against Spine Imaging are not warranted.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Spine Imaging's Motion to Dismiss/General and/or Strike Defendant Allstate Insurance Company's Counterclaim [Docket No. 117] is **GRANTED**. Allstate's counterclaim for attorneys' fees and costs is **DISMISSED without prejudice**.

2. Plaintiff Spine Imaging's Motion to Dismiss/General Defendant Liberty Mutual Fire Insurance Company's Amended Counterclaims [Docket No. 119] is **GRANTED in part** and **DENIED in part**:

   a. The motion is **GRANTED** as to Counterclaims I, II, and V as alleged against Liberty in defendant Liberty Mutual Fire Insurance Company's Answer and Counterclaim and Third Party Complaint [Docket No. 126]. Counterclaims I, II, and V as alleged against Liberty are **DISMISSED**.

   b. The motion is **DENIED** in all other respects.

3.      Third-Party Defendants Eduardo Bullon, Hans Michal Castro, Central Medical Clinic, LLC, and Alfonso Morales-Utrilla's Motion to Dismiss/General Third Party Complaint [Docket No. 142] is **GRANTED in part** and **DENIED in part**.

a.      The motion is **GRANTED** as to Count V in defendant Liberty Mutual Fire Insurance Company's Answer and Counterclaim and Third Party Complaint [Docket No. 126].  Count V is **DISMISSED**.

b.      The motion is **DENIED** in all other respects.

4.      Third-Party Defendants William Ford and Northstar Radiology Corporation, P.A.'s Motion to Dismiss/General Third Party Complaint [Docket No. 140] is **GRANTED in part** and **DENIED in part.**

a.      The motion is **GRANTED** as to Count V in defendant Liberty Mutual Fire Insurance Company's Answer and Counterclaim and Third-Party Complaint [Docket No. 126].  Count V is **DISMISSED**.

b.      The motion is **DENIED** in all other respects.

5.      Defendant American Family Mutual Insurance Company's Motion for Summary Judgment [Docket No. 181] is **DENIED.**  Defendant American Family Mutual Insurance Company is **DISMISSED without prejudice**.

6.      Defendant American Family's Motion for Sanctions Under Rule 11 [Docket No. 198] is **DENIED**.

DATED:   August 22, 2011
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge